The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BENANCIO GARCIA III, *Plaintiff*, v. STEVEN HOBBS, in his official capacity as Secretary of State of Washington, and the STATE OF WASHINGTON, *Defendants*. | Case No.: 3:22-cv-5152-RSL<br><br>AMENDED COMPLAINT<br><br>THREE JUDGE COURT |

"It is a sordid business, this divvying us up by race." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 511 (2006) (Roberts, C.J., concurring in part, concurring in the judgment in part, and dissenting in part).

**I. INTRODUCTION**

1. Plaintiff brings this action to challenge the constitutionality of Washington State Legislative District 15 in the Yakima Valley as an illegal racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment to Constitution of the United States.

2. As part of the 2021 redistricting process, the Washington State Redistricting Commission (the "Commission") approved, and the Washington State Legislature (the "Legislature") amended and ratified, a plan for the redistricting of state legislative districts in

AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

1

**Stokesbary PLLC**
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

which Legislative District 15 was purposefully drawn to have a Latino citizen voting age population ("CVAP") of 50.02%.

3. The Equal Protection Clause bars redistricting "on the basis of race without sufficient justification." *Abbott v. Perez*, 138 S. Ct. 2305, 2314 (2018) (citing *Shaw v. Reno*, 509 U.S. 630, 641 (1993)).

4. This new Legislative District 15 can only be explained by race. The district's odd shape, which crosses five county lines, bisects two of the largest cities in Central and Eastern Washington and divides certain communities of interest while combining other communities with divergent interests, flies in the face of traditional districting principles (as well as Washington state constitutional and statutory requirements). Contemporaneous public statements of the voting members of the Commission (each, a "Commissioner") provide further evidence that a majority Latino CVAP legislative district in Central and Eastern Washington was a precondition to the Commission's approval of any state legislative district plan.

5. Because "racial considerations predominated over others, the design of the district must withstand strict scrutiny. The burden thus shifts to the State to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Cooper v. Harris*, 137 S. Ct. 1455, 1464 (2017) (citing *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 800 (2017)).

6. There was no compelling interest that justified using race as the predominant factor in creating Legislative District 15. While complying with Section 2 of the Voting Rights Act is a compelling state interest, the state has the burden of showing that it had a "strong basis in evidence" to conclude that Section 2 required its action. *Cooper v. Harris*, 137 S. Ct. at 1464 (quoting *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015)).

7. Two Commissioners stated that Section 2 of the Voting Rights Act compelled a safe Democrat, majority Latino CVAP district. But that was solely based upon a short presentation solicited by the State Senate Democratic Caucus and created by an interested advocacy organization. Neither the Commission nor the State of Washington conducted independent

analysis to determine what Section 2 of the Voting Rights Act required. A presentation by an interested party is not enough to create a compelling interest. As Justice Alito warned in an analogous redistricting case, "[a] group that wants a State to create a district with a particular design may come to have an overly expansive understanding of what § 2 demands. So one group's demands alone cannot be enough." *Abbott v. Perez*, 138 S. Ct. at 2334.

8. The state must also prove its action was narrowly tailored, which the state cannot do if it does not carefully evaluate and consider race-neutral alternatives. *See, e.g.*, *Cooper v. Harris*, 137 S. Ct. at 1471. The Commissioners' stated prerequisite of a majority Latino CVAP district necessarily means the Commission did not consider race-neutral alternatives. Moreover, it is unclear how the Commission arrived at a 50.02% Latino CVAP in Legislative District 15 other than to meet its preferred racial balance.

9. Because race was the predominant motivating factor in creating Legislative District 15, but such race-based sorting neither served a compelling government interest nor was narrowly tailored to that end, it violates the Equal Protection Clause of the Fourteenth Amendment.

10. Plaintiff seeks a declaration that Legislative District 15 is invalid and an injunction prohibiting the Defendant from calling, holding, supervising or taking any action with respect to State Legislative elections based on Legislative District 15 as it currently stands.

## II. PARTIES

11. Plaintiff Benancio Garcia III is a United States citizen, over the age of 18, and registered voter in the State of Washington. He currently resides in Legislative District 15. He intends to vote in future elections.

12. Defendant Steven Hobbs is being sued in his official capacity as the Secretary of State of Washington. Under state law, the Secretary of State is "the chief election officer for all federal, state, county, city, town, and district elections," RCW 29A.04.230, responsible for "the

AMENDED COMPLAINT 3
No. 3:22-cv-5152-RSL

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

administration, canvassing, and certification of . . . state primaries, and state general elections,"[1] RCW 43.07.310. In addition, "declarations of candidacy for the state legislature . . . in a district comprised of voters from two or more counties"—such as Legislative District 15—are to be filed with the Secretary of State. RCW 29A.24.070.

13. Defendant State of Washington is being sued pursuant to the Court's Order of Joinder (Dkt. # 13) ordering Plaintiff to add the State of Washington as a Defendant. The State of Washington includes the respective governmental arms responsible for adopting redistricting plans and ensuring that elections are conducted in accordance with those plans in the State.

### III. JURISDICTION AND VENUE

14. This Court has jurisdiction to hear Plaintiff's claim pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1331, 1343(a)(3) and 1357. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction to award Plaintiff's costs and attorneys' fees pursuant to 42 U.S.C. § 1988, and 52 U.S.C. § 10310(e).

15. A three-judge district court is requested pursuant to 28 U.S.C. § 2284(a), as Plaintiff is "challenging the constitutionality of . . . the apportionment of a[] statewide legislative body."

16. This Court has personal jurisdiction over the Defendant. Defendant Steve Hobbs is a state official who resides in Washington and performs his official duties in Olympia, Washington. Defendant State of Washington is a state of the United States of America.

17. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred and will occur in this judicial district. In addition, Defendant is a state official performing his official duties in the Western District of Washington.

---

[1] "The plan approved by the commission . . . shall constitute the districting law applicable to this state for legislative . . . elections, beginning with the next elections held in the year ending in two." RCW 44.05.100. Thus, the Secretary of State administers legislative district elections based on the boundaries established by the Commission's redistricting plan.

AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

4

**Stokesbary PLLC**
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

## IV. FACTS

### A. Washington State Redistricting

18. The Washington state constitution directs that "[i]n January of each year ending in one, a commission shall be established to provide for the redistricting of state legislative and congressional districts." WASH. CONST. art. II, § 43(1); *see also* RCW 44.05.030.

19. The Commission is composed of five members. Each of the "leader[s] of the two largest political parties in each house of the legislature . . . appoint one voting member." These four voting members select a fifth, nonvoting member to serve as the Commission's chairperson WASH. CONST. art. II, § 43(2); *see also* RCW 44.05.030.

20. The Washington state constitution requires that "[e]ach district . . . contain a population . . . as nearly equal as practicable to the population of any other district" and that "[t]o the extent reasonable, each district . . . contain contiguous territory, . . . be compact and convenient, and . . . be separated from adjoining districts by natural geographic barriers, artificial barriers, or political subdivision boundaries." WASH. CONST. art. II, § 43(5). In addition, the Commission's redistricting plan "shall not be drawn purposely to favor or discriminate against any political party or group." *Id.*

21. The Commission's redistricting plan must also, "insofar as practical," follow certain other traditional redistricting principles, including that "[d]istrict lines should be drawn so as to coincide with the boundaries of local political subdivisions and areas recognized as communities of interest" and that "[t]he number of counties and municipalities divided among more than one district should be as small as possible." RCW 44.05.090.

22. In order to adopt a redistricting plan, it must be approved by "[a]t least three of the voting members" of the Commission. WASH. CONST. art. II, § 43(6).

23. The Commission is required to "complete redistricting . . . no later than November 15th of each year ending in one." *Id.*; *see also* RCW 44.05.100.

24. "Upon approval of a redistricting plan," the Commission "shall submit the plan to the legislature," which may amend the Commission's plan within the first 30 days of the next

AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

5

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

1 regular or special legislative session by "an affirmative vote in each house of two-thirds of the members elected or appointed thereto." RCW 44.05.100.

25. After such 30-day period, "[t]he plan approved by the commission, with any amendment approved by the legislature, shall be final . . . and shall constitute the districting law applicable to this state for legislative and congressional elections, beginning with the next elections held in the year ending in two." *Id.*

26. Following the Commission's adoption of a redistricting plan, it "shall take all necessary steps to conclude its business and cease operations . . . on July 1st of each year ending in two . . . ." RCW 44.05.110.

27. If the Commission has ceased to exist, the Legislature may "adopt legislation reconvening the commission for purposes of modifying the redistricting plan." RCW 44.05.120(1).

**B.     The History of Legislative District 15**

28. Over the past 90 years, Legislative District 15 has changed during each round of redistricting, but never as drastically as between 2012 and 2022. Historically, the district has covered a substantial portion of Yakima County. (From 1982 through 2001, it also included portions of neighboring counties, but never as far northeast as Othello or as far east as Pasco).

29. A map of Legislative District 15 from 1931 through 1957 is shown below. The district included only a portion of Yakima County. STATE OF WASH., MEMBERS OF THE LEGISLATURE 1889-2019 174 (2019).



AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

6

**Stokesbary PLLC**
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

30. A map of Legislative District 15 from 1957 through 1965 is shown below. The districted included only a portion of Yakima County. *Id.* at 177.



31. A map of Legislative District 15 from 1965 through 1972 is shown below. The district included only a portion of Yakima County. *Id.* at 180.



32. A map of Legislative District 15 from 1972 through 1981 is shown below. The district included only a portion of Yakima County. *Id.* at 182.



AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

7

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

33. A map of Legislative District 15 from 1982 through 1991 is shown below. The district included portions of Yakima and Benton Counties. *Id.* at 184



34. A map of Legislative District 15 from 1991 through 2001 is shown below. The district included a portion of Yakima, Benton, Klickitat, and Skamania Counties. *Id.* at 186.



35. A map of Legislative District 15 from 2002 through 2011 is shown below. The district included a portion of Yakima, Klickitat, Skamania, and Clark Counties. *Id.* at 188.



AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

8

**Stokesbary PLLC**
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

36. A map of the current version of Legislative District 15, in effect since 2012, is shown below. The district once again includes only a portion of Yakima County. *Id.* at 190.



C. **The 2021 Redistricting Process**

37. On December 10, 2020, the Speaker of the House of Representatives announced the appointment of April Sims as a Commissioner representing the House Democratic Caucus and the Senate Majority Leader announced the appointment of Brady Piñero Walkinshaw as a Commissioner representing the Senate Democratic Caucus. *E.g.*, Press Release, Washington State House Democrats, *House, Senate leaders announce their appointees for Redistricting Commission* (Dec. 10, 2020), https://housedemocrats.wa.gov/blog/2020/12/10/house-senate-leaders-announce-their-appointees-for-redistricting-commission/.

38. On January 15, 2021, the Senate Minority Leader announced the appointment of Joe Fain as a Commissioner representing the Senate Republican Caucus and the House Minority leader announced the appointment of Paul Graves as a Commissioner Representing the House Republican Caucus. *See, e.g.*, Eric Rosane, *Former Lawmakers Joe Fain, Paul Graves Tapped by Legislative GOP Leaders as Members of Redistricting Commission*, THE CHRONICLE (Centralia), Jan. 15. 2021, *available at* https://www.chronline.com/stories/former-lawmakers-joe-fain-paul-graves-tapped-by-legislative-gop-leaders-as-members-of,260219.

39. On January 30, 2021, the four voting Commissioners appointed Sarah Augustine as the nonvoting fifth member and Chair of the Commission. *E.g.*, Pat Muir, YAKIMA HERALD-REPUBLIC, *White Swan woman tapped to lead state Redistricting Commission*, Feb. 8,

AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

9

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

2021, *available at* https://www.yakimaherald.com/news/local/white-swan-woman-tapped-to-lead-state-redistricting-commission/article_37671834-78c9-5cec-a5a5-d9d1aab30f72.html.

40. Between February 2021 and November 2021, the Commission held Special Business Meetings, Regular Business Meetings, and Public Outreach Meetings. *See, e.g.*, Washington State Redistricting Commission, Business Meetings, https://www.redistricting.wa.gov/commission-meetings; Washington State Redistricting Commission, Public Outreach Meetings, https://www.redistricting.wa.gov/outreach-meetings.

41. On September 21, 2021, each of the four voting Commissioners released a proposed legislative district map to the public. *E.g.*, Washington State Redistricting Commission, Legislative Maps, https://www.redistricting.wa.gov/commissioner-proposed-maps.

42. No Commissioner proposed a version of Legislative District 15 that resembled the district as drawn by the Commission's final redistricting plan. No proposal, for example, contained the cities of Pasco or Othello, and none contained a majority Latino CVAP. *See id.*

43. The map of Legislative District 15 initially proposed by Commissioner Sims is shown below. It combined the Yakama Indian Reservation with parts of Yakima and communities along Interstate 82 to Grandview. Commissioner Sims stated that her map "recognizes the responsibility to create districts that provide fair representation for communities of interest" and that "[m]aintaining and creating communities of interest" and "[c]entering and engaging communities that have been historically underrepresented" were "values guid[ing]" her efforts. *Id.*



AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

10

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

44. The map of Legislative District 15 initially proposed by Commissioner Walkinshaw is shown below. It merged cities around Yakima into a district that stretched north beyond Ellensburg and south to the Columbia River. Commissioner Walkinshaw stated his goals were to "[m]aintain and unite communities of interest and reduce city splits" and "prioritize[e] the needs of . . . historically underrepresented communities." His plan also "[c]reate[d] a majority-Hispanic/Latino district" in the neighboring Legislative District 14, which was "55.5% [Hispanic/Latino] by Voting Age Population (VAP)" and "65.5% people-of-color by VAP." *Id.*



45. The map of Legislative District 15 as proposed by Commissioner Fain is shown below. It included the City of Yakima and consisted of the eastern third of Yakima County. Commissioner Fain "place[d] existing school district boundaries at the cornerstone of his legislative framework." His plan also "create[d] seven majority-minority districts statewide, and one additional majority-minority citizen voting age population (CVAP) district." *Id.*



AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

11

**Stokesbary PLLC**
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

46. The map of Legislative District 15 as proposed by Commissioner Graves is shown below. It combined the northeastern portion of Yakima County, including the cities along Interstate 82, with most of Benton County apart from Richland and Kennewick. Commissioner Graves's plan "focuses on communities of interest and is not drawn to favor either party or incumbents" and featured eight "majority-minority" districts. *Id.*



47. On October 19, 2021, the Washington State Senate Democratic Caucus circulated a presentation by Dr. Matt Barreto, a professor of political science and Chicana/o studies at UCLA and co-founder of the UCLA Voting Right Project. *See* Presentation by Matt Barreto, Assessment of Voting Patterns in Central/Eastern Washington and Review of the Federal Voting Rights Act, Section 2 Issues, (Oct. 19, 2021), https://senatedemocrats.wa.gov/wp-content/uploads/2021/10/Barreto-WA-Redistricting-Public-Version.pdf.

48. Upon information and belief, Dr. Barreto was hired by the Washington Senate Democrat Caucus, not by the Commission, the State of Washington or the Legislature.

49. The presentation argued that, in order to comply with Section 2 of the Voting Right Act, a majority Latino CVAP district in the Yakima Valley that voted for the Democratic Party's preferred candidates is required. *See id.*

50. The presentation included analysis of voting patterns for just two statewide general elections, the 2012 U.S. Senate race between Maria Cantwell and Michael Baumgartner and the 2020 Governor race between Jay Inslee and Loren Culp. The presentation did not include analysis

AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

12

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

of voting patterns in primary elections, or any other analysis, exploring whether voting patterns could be explained by partisanship, rather than race. *See id.*

51. Importantly, the presentation also did not consider or suggest any race-neutral alternatives despite showing that the districts initially proposed by Commissioners Sims and Walkinshaw would have voted for the Latino bloc's preferred candidate over the majority bloc's preferred candidate in the 2020 President/Vice President race. *See id.*

52. Only two claimed "VRA Compliant" legislative district options were presented. One district contained a Latino CVAP of 60% and the other contained a combined Latino and Native American CVAP of 60%, without any explanation for why a 60% threshold was chosen or why Latino and Native American voters should or could be grouped together for Voting Rights Act purposes. *See id.*

53. Despite the brevity and potential bias of the analysis, Commissioner Walkinshaw issued a statement on October 21, 2021, two days after the presentation, stating that he and Commissioner Sims "will be releasing new statewide legislative maps early next week." Press Release, Washington Senate Democrats, *New definitive analysis by UCLA Voting Rights Expert: final Washington state legislative plan must include VRA-compliant district in the Yakima Valley* (Oct. 21, 2021), https://senatedemocrats.wa.gov/blog/2021/10/21/new-definitive-analysis-by-ucla-voting-rights-expert-final-washington-state-legislative-plan-must-include-vra-compliant-district-in-the-yakima-valley/.

54. Commissioner Walkinshaw also stated that "as the first ever Latino commissioner, it has been extremely important for me to lift up and elevate Hispanic voters, and undo patterns of racially polarized voting, particularly in the Yakima Valley." Melissa Santos, *Proposed WA redistricting maps may violate Voting Rights Act*, CROSSCUT (Oct. 21, 2021), https://crosscut.com/politics/2021/10/proposed-wa-redistricting-maps-may-violate-voting-rights-act.

55. On October 25, 2021, Commissioners Sims and Walkinshaw released revised legislative plans, both of which incorporated the "Yakama Reservation" district option from Dr.

Bareto's presentation, which achieved a 60% majority CVAP by combining Latino and Native populations.

56. On October 26, 2021, less than three weeks before the Commission's statutory deadline, Washington State Senate Democrats issued a press release holding out Dr. Bareto's presentation as "definitive," stipulating that "the final adopted map must include a majority-Hispanic district in the Yakima Valley." Press Release, Washington Senate Democrats, *Walkinshaw releases new VRA-Compliant Legislative map* (Oct. 26, 2021), https://senatedemocrats.wa.gov/blog/2021/10/26/following-new-analysis-commissioner-walkinshaw-releases-new-legislative-map-compliant-with-voting-rights-act/.

**D.  Legislative District 15 under the 2021 Plan**

57. Shortly before midnight on November 15, 2021, the Commission "voted unanimously to approve a legislative redistricting plan." Order Regarding the Washington State Redistricting Commission's Letter to the Supreme Court on November 16, 2021 and the Commission Chair's November 21, 2021 Declaration (Redistricting Order), No. 25700-B-676, at 2 (Wash. Dec. 3, 2021).

58. Shortly after midnight on November 16, 2021, the Commission submitted "a formal resolution adopting the redistricting plan" and "a letter transmitting the plan" to the Legislature. *Id.*

59. The Legislature approved minor adjustments to the Commission's final plan. *See* H. Con. Res. 4407, 67th Leg., 2022 Reg. Sess. (Wash. 2022).

60. The redistricting plan approved by the Commission, together with the Legislature's amendments, constitutes Washington state's districting law for legislative elections, beginning with the upcoming 2022 elections. *See* WASH. CONST. art. II, § 43(7); RCW 44.05.100(3); *see also* Redistricting Order at 4.

61. The map of the new Legislative District 15 as defined by the Commission's approved plan is shown below. It disregards traditional districting principles such as compactness,

AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

14

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

maintaining communities of interest, and respecting political subdivisions or geographical boundaries.



62. The shape of Legislative District 15 is strained and noncompact. Its northwest and southeast corners are narrow slivers of land that reach into the cities of Yakima and Pasco respectively, where a substantial majority the district's population resides. The district extends north to Mattawa and northeast to Othello, based upon information and belief, for the sole purpose of including those cities' substantial Latino populations. The interior of the district is sparsely populated.

63. The odd shape of Legislative District 15 cannot be explained by political or natural boundaries. It stretches into parts of five counties, yet contains not a single whole county. Its western and eastern sections are divided by the Yakima Firing Center, Rattlesnake Hills, the Hanford Nuclear Site, and the Columbia River. Despite these geographic boundaries, Legislative District 15 does not follow major thoroughfares. To travel just from Sunnyside to Pasco via Interstate 82 and Interstate 182 would require crossing through both Legislative Districts 16 and 8 before reentering Legislative District 15 in Pasco.

64. The Commission ignored communities of interest in creating Legislative District 15. The district's boundaries not only split up urban communities like Yakima and Pasco, but

AMENDED COMPLAINT 15
No. 3:22-cv-5152-RSL

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

smaller cities like Grandview, Moxee and Union Gap. And while Legislative District 15 divides communities of shared interest, it also groups together communities with distinctly different interests. For example, it extends to Pasco, Othello, Mattawa and the Hanford Nuclear Site, none of which have previously been placed in the same legislative district as the city of Yakima or any portion of Yakima County in the state's history.

65. The boundaries of the new Legislative District 15 approved by the Commission do not resemble prior Legislative District 15 boundaries or those of any publicly-proposed districts by any Commissioner during the 2021 redistricting process.

66. However, the new Legislative District 15 does contain a Latino CVAP of 50.02%, a figure so barely sufficient to constitute a majority that it is statistically impossible to have occurred by random chance.

67. The boundaries of the new Legislative District 15 were clearly negotiated and approved predominantly on the basis of race in order to create a majority Latino CVAP legislative district.

68. No compelling interest justified the predominant consideration of race in creating Legislative District 15.

69. The Commission cannot justify its decision to use race as the predominant factor in drawing Legislative District 15's boundaries under Section 2 of the Voting Rights Act. The Commission could not have a strong basis in evidence to believe that it was required to create a new Latino-opportunity district to avoid liability under Section 2 because the Commission did not conduct any analysis of racial voting patterns or of what Section 2 required. *See, e.g.*, *Cooper v. Harris*, 137 S. Ct. at 1464 ("[S]aid otherwise, the State must establish that it had 'good reasons' to think that it would transgress the [Voting Rights] Act if it did not draw race-based district lines." (citing *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. at 278)).

70. Two Commissioners cited the presentation from the UCLA Voting Rights Project, but one advocacy group's demands alone are insufficient to create a strong basis in evidence that justifies sorting voters by race. *See, e.g.*, *Abbott v. Perez*, 138 S. Ct. at 2334 ("A group that wants

AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

16

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

a State to create a district with a particular design may come to have an overly expansive understanding of what § 2 demands. So one group's demands alone cannot be enough.")

71. Even if there were a compelling state interest in creating Legislative District 15 using race as the predominant factor, Legislative District 15 is not narrowly tailored to achieve that interest. The Commission did not perform any analysis whatsoever of race-neutral alternatives, including, for example, what percentage of Latino voters would be necessary to have the opportunity to elect their candidates of choice. *See, e.g.*, *Cooper v. Harris*, 137 S. Ct. at 1471 ("To have a strong basis in evidence to conclude that § 2 [of the Voting Rights Act] demands such race-based steps, the State must carefully evaluate whether a plaintiff could establish the *Gingles* preconditions . . . in a new district created without those measures.").

## V. CLAIMS

### A. Violation of the Equal Protection Clause of the United States Constitution

72. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in the paragraphs above.

73. Section 1 of the Fourteenth Amendment to the U.S. Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

74. Race was the predominant factor motivating the Commission's decision to draw the lines encompassing Legislative District 15.

75. The Commission's race-based sorting of voters in Legislative District 15 neither served a compelling state interest nor was narrowly tailored to that end.

76. Therefore, Legislative District 15 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

77. Plaintiff has no adequate remedy at law other than the judicial relief sought here. The failure to temporarily and permanently enjoin the conduct of elections based on Legislative District 15 will irreparably harm Plaintiff by violating his constitutional rights.

AMENDED COMPLAINT 17
No. 3:22-cv-5152-RSL

**Stokesbary PLLC**
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

## VI. PRAYER FOR RELIEF

78. WHEREFORE, Plaintiff asks for the following relief:

    a. Convene a court of three judges pursuant to 28 U.S.C. § 2284(a);

    b. Declare that Legislative District 15 is an illegal racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution;

    c. Issue a permanent injunction enjoining Defendant from enforcing or giving any effect to the boundaries of Legislative District 15, including an injunction barring Defendant from conducting any further elections for the Legislature based on Legislative District 15;

    d. Order the creation of a new valid plan for legislative districts in the State of Washington that does not violate the Equal Protection Clause;

    e. Award Plaintiff reasonable attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988, 52 U.S.C. § 10310(e) and any other applicable law; and

    f. Grant such other and further relief as this Court deems just and proper.

DATED this 9th day of June, 2022.

Respectfully submitted,

*s/ Andrew R. Stokesbary*
Andrew R. Stokesbary, WSBA #46097
STOKESBARY PLLC
1003 Main Street, Suite 5
Sumner, WA 98390
T: (206) 486-0795
dstokesbary@stokesbarypllc.com

*Counsel for Plaintiff*

AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

18

Stokesbary PLLC
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Western District of Washington through the Court's CM/ECF System, which will serve a copy of this document upon all counsel of record.

DATED this 9th day of June, 2022.

Respectfully submitted,

*s/ Andrew R. Stokesbary*
Andrew R. Stokesbary, WSBA #46097

*Counsel for Plaintiff*

AMENDED COMPLAINT
No. 3:22-cv-5152-RSL

19

**Stokesbary PLLC**
1003 Main Street, Suite 5
Sumner, Washington 98390
PHONE: (206) 486-0795