UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BENANCIO GARCIA III, | Case No.: C22-5152-RSL-DGE-LJCV |
| Plaintiff, | |
| v. | **ORDER STRIKING ERRATA** |
| STEVEN HOBBS, *et. al.*, | |
| Defendants. | |

This matter comes before the Court on the "State of Washington's Motion to Strike Notice of Errata Corrections for Deposition of Benancio Garcia III." Dkt. # 43. The errata sheet (Dkt. # 38-1) was timely filed and in the form specified by Federal Rule of Civil Procedure 30(e), but the changes fundamentally altered the substance of deposition testimony that was material to the State's then-pending request that the Court conduct a conflicts inquiry. As an explanation for making each of the thirty changes, Mr. Garcia states:

> Following my deposition, I reviewed the transcript and my communications with counsel. I realized I had misremembered many things, and now that my memory has been refreshed, I wanted to correct my misstatements for the record.

Dkt. # 38-1 at 4-10. Intervenor-Defendants do not assert that the court reporter incorrectly transcribed the witness' testimony as it was provided at the deposition, and all of the changes, if accepted, improved the Intervenor-Defendants' chances of avoiding a finding of conflict. The State of Washington requests that the errata sheet be stricken as improper.

Rule 30(e)(1) provides that, upon request at the deposition, the deponent has thirty days after the deposition transcript becomes available to review the transcript and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. Proc. 30(e)(1)(B). "While the language of [Rule] 30(e) permits corrections 'in form or substance,' this permission does not include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment." *Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F.3d 1217, 1225 (9th Cir. 2005). Intervenor-Defendants argue that errata are improper only if offered to avoid summary judgment. But *Hambleton* makes clear that "Rule 30(e) should be used for corrective, not contradictory, changes." *Id.* at 1226. The relevant inquiry for the Court is "whether the alterations have a legitimate purpose" or are instead offered to rewrite testimony that was previously given under oath. *Hambleton*, 397 F.3d at 1224-26. *See also Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) ("The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination."); *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) ("We also believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as a correction of an error in transcription, such as dropping a 'not.'"); *Campagnolo S.r.l.*, 2010 WL 11527379, at *2 ("[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription.").

Because the sham affidavit rule must be applied with caution, the Court must make two findings before striking an errata. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). First, the Court must find that the errata is a sham. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). "In determining whether a deposition errata constitutes a sham, courts consider circumstances including the number of corrections, whether the corrections fundamentally change the prior testimony, the impact of the corrections on the cases (including whether they pertain to dispositive issues), the timing of the submission of corrections, and the witness's qualifications to testify." *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1218, 1224 (W.D. Wash. 2014). Second, the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous." *Yeager*, 693 F.3d at 1080 (quoting *Van Asdale*, 577 F.3d at 998–99). The Court should strike errata as shams sparingly, "because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Id.* The Ninth Circuit has specifically "caution[ed] that newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham." *Id.* at 1081.

*Paunovic v. OBI Seafoods LLC*, No. C21-884 MJP, 2023 WL 1864211, at *3 (W.D. Wash. Feb. 9, 2023), reconsideration denied, No. C21-884 MJP, 2023 WL 2428403 (W.D. Wash. Mar. 9, 2023).

Each and every circumstance suggests that the corrections offered by Mr. Garcia constitute a sham. There were thirty corrections, all of which were substantive. The corrections were targeted at testimony the State of Washington had relied upon when requesting a conflicts inquiry and were offered while that motion was still pending. None of the corrections sought to correct a transcription error, and many of them involved testimony regarding events that were fairly recent and squarely within Mr. Garcia's personal knowledge.

With regards to the second necessary finding, Mr. Garcia's corrections are clearly and unambiguously inconsistent with the testimony he provided under oath. Indeed, the transcript "reflect[s] clear and consistent answers and fail[s] to manifest any confusion that could have

ORDER STRIKING ERRATA                              3

merited post-deposition correction." *Karpenski*, 999 F. Supp. 2d at 1225. The very first correction, for example, changes Mr. Garcia's response to the question, "what did you do to prepare today for this deposition?" from "I didn't prepare for this deposition" to "I met with my attorneys for a few hours." Dkt. # 43 at 2. Follow up questions suggested that the only communications Mr. Garcia had with his attorneys after the filing of the complaint were an email received approximately six months before the deposition and a telephone call shortly before the deposition when Mr. Garcia reached out to counsel to discuss the subpoena that had been served on him. Dkt. # 30-2 at 25-26. Mr. Garcia also seeks to correct lengthy testimony regarding counsel's plan to dismiss his claims in this case if the Intervenor-Defendants were permitted to add the same claim in *Soto Palmer v. Hobbs*, C22-5035RSL. Testimony that he would "never agree to not be part – I agreed that I would finish this all the way through to --" is changed to "I agreed that if the claim proceeded in the *Palmer* litigation [then] I was still seeing this through." Dkt. # 43 at 5. A "yes" in response to the question, "[s]o this representation was made without your authorization then?" was changed to "no." *Id*. His testimony that:

> I wasn't aware until it was brought up to me today that if the case were to move forward, that the intervening defendants – or intervening Jose, Alex, and Mr. Campos would be the ones moving forward on the case and I would be withdrawn from the case. Is that correct? . . . I got to be honest. I made it clear that, if I started this, I was going to finish to the end, and I am not pleased.

was changed to:

> I was aware what the Palmer Intervenor Defendants were asking the Court to do, and that [] the intervening defendants -- or intervening Jose, Alex, and Mr. Campos would be the ones moving forward on the case and I would be withdrawn from the case. . . . While my preference is to finish this litigation, in the end, I am okay so long as we eventually prevail with my claim in whatever case.

Dkt. # 43 at 6.

Despite the Court's general reluctance to strike errata as shams, where the corrective mechanism provided in Rule 30(e) is used to fundamentally and materially alter sworn testimony to gain a tactical advantage in the litigation with no reasonable explanation for the alterations, the errata is improper. The fact that the Court has since resolved the request for a conflicts inquiry does not mandate that sham facts and assertions remain in the record: if the altered deposition transcript were to be used at trial, the other parties would be forced to expend time and energy showing how the revisions came about and why they are a sham. If Mr. Garcia's deposition testimony is presented at trial for any reason, the burden should be on him to explain that the testimony – as properly recorded by the court reporter -- was not accurate and should be disregarded in favor of his subsequent assertions.

For all of the foregoing reasons, the errata (Dkt. # 38-1) is hereby STRICKEN.

Dated this 20th day of April, 2023.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge