UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BENANCIO GARCIA III,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STEVEN HOBBS, *et al*.,<br><br>　　　　　Defendants. | Cause No. C22-5152-RSL-DGE-LJCV<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

　　　　This matter comes before the Court on "Plaintiff's Motion for Summary Judgment." Dkt. # 45. Plaintiff alleges that Washington State Legislative District 15 in the Yakima Valley is an illegal racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff seeks summary determinations that race was a predominant factor motivating the creation of Legislative District 15 and that there was no compelling justification for separating citizens into different voting districts based on race. The State of Washington opposes plaintiff's motion. Secretary of State Hobbs neither opposes nor supports the motion.

　　　　Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and taking the evidence in the light most favorable to defendants, the Court finds as follows:

### BACKGROUND

The Washington State Constitution requires the establishment of a Commission to redistrict state legislative and congressional districts each decade. The Commission is composed of five members. Each of the "leader[s] of the two largest political parties in each house of the legislature . . . appoint one voting member." WASH. CONST. art. II, § 43(2). These four voting members select a fifth, nonvoting member to serve as the Commission's chairperson.

The Washington Constitution sets out a number of principles to guide the Commission's work, including that "[e]ach district shall contain a population . . . as nearly equal as practicable to the population of any other district" and that "[t]o the extent reasonable, each district shall contain contiguous territory, shall be compact and convenient, and shall be separated from adjoining districts by natural geographic barriers, artificial barriers, or political subdivision boundaries." WASH. CONST. art. II, § 43(5). The Commission's redistricting plan "shall not be drawn purposely to favor or discriminate against any political party or group." *Id*. Pursuant to its authority to enact laws establishing additional standards governing the Commission's work, the legislature also requires that the plan, "insofar as practical," follow certain other traditional districting principles, including that "[d]istrict lines should be drawn so as to coincide with the

---

[1] This matter can be resolved on the papers submitted. Plaintiff's request for oral argument is therefore DENIED.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 3

boundaries of local political subdivisions and areas recognized as communities of interest[]" and that "[t]he number of counties and municipalities divided among more than one district should be as small as possible." RCW 44.05.090.

For a redistricting plan to be adopted, it must be approved by at least three of the four voting members of the Commission. The Commission is required to "complete redistricting . . . no later than November 15th of each year ending in one." WASH. CONST. art. II, § 43(6); *see also* RCW 44.05.100. The Commission then submits the plan to the legislature, which has limited authority to amend the plan by "an affirmative vote in each house of two-thirds of the members elected or appointed thereto." RCW 44.05.100.

Between December 10, 2020, and January 15, 2021, the leaders of the Democratic and Republican caucuses appointed the voting members of the Commission as follows:

    April Sims – House Democratic Caucus
    Paul Graves – House Republican Caucus
    Brady Piñero Walkinshaw – Senate Democratic Caucus
    Joe Fain – Senate Republican Caucus

The four voting members appointed Sarah Augustine as the non-voting fifth member and Chair of the Commission.

In the decade since the last legislative redistricting occurred, there were three cases involving the application of the federal and state Voting Rights Acts in south, central Washington. In *Montes v. City of Yakima*, 40 F. Supp.3d 1377 (E.D. Wash. 2014), the court determined that Yakima's at-large voting system for city counsel elections violated Section 2 of

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

1 the federal Voting Rights Act ("VRA"), specifically finding that Latino voters were a politically
2 cohesive group and "that the non-Latino majority in Yakima routinely suffocates the voting
3 preferences of the Latino minority." *Id.* at 1405 and 1407. In two subsequent challenges to the
4 at-large voting systems in Yakima and Pasco, the parties and the courts agreed that the facts
5 could support a finding of VRA violations, and the matters were settled. *Glatt v. City of Pasco*,
6 No. 4:16-cv-05108-LRS, Dkt. # 16 (E.D. Wash. Sept. 2, 2016); *Aguilar v. Yakima County*, No.
7 20-2-00180-19 (Superior Court for Kittitas County Oct. 29, 2021). In *Glatt*, the parties
8 stipulated that the Latino population in Pasco is politically cohesive and the non-Latino majority
9 votes sufficiently as a block to defeat Latino-preferred candidates. No. 4:16-cv-05108-LRS, Dkt.
10 # 16 at * 5. These cases, coupled with the publication of the most recent census data, put the
11 Commissioners on notice that race would likely be an issue when drawing a legislative district
12 in and around Yakima.

13    Commissioner Sims' staff collected analyses regarding voting patterns in the Yakima
14 area that had been performed by Dr. Matt Barreto[1] and The MGGG Redistricting Lab in 2013
15 and 2020, respectively. Both documents found clear patterns of racially polarized voting in the
16 Yakima area. Commissioner Sims requested that staff look into having Dr. Barreto do a voting
17 rights district analysis for the Commission.

---

[1] In 2013, Dr. Barreto was a professor at the University of Washington. He is now a professor at UCLA and the founder and faculty director of the UCLA Voting Rights Project.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

On September 21, 2021, each of the four voting Commissioners released a proposed legislative district map to the public. Dkt. # 45-24 (Fain); Dkt. # 45-25 (Graves); Dkt. # 45-26 (Sims); Dkt. # 45-28 (Walkinshaw). The proposed versions of the legislative districts were developed with different redistricting principles and goals in mind and, not surprisingly, varied significantly. Commissioner Fain said his overarching goals were to promote competitiveness in elections and to emphasize school district boundaries as the cornerstone of his legislative framework. Dkt. 45-7 at 120; Dkt. # 14 at ¶ 45 (admitted allegation of the Amended Complaint). He proposed seven majority-minority districts statewide and one district in which the citizen voting age population ("CVAP") of a minority formed a majority. Dkt. # 14 at ¶ 45. Commissioner Graves stated one of his "top priorities" was to try to increase the number of competitive districts in the state while focusing on communities of interest and avoiding districts that favored either party or incumbents. Dkt. 45-2 at 260-61; *see also* Dkt. # 14 at ¶ 46 (admitted allegation of the Amended Complaint). He proposed eight majority-minority districts. Dkt. # 14 at ¶ 46. Commissioner Sims explained she wanted maps that reflected "the political reality of the state," respected tribal sovereignty, and "provide[d] fair representation for communities of interests," especially those that were historically underrepresented. Dkt. 45-3 at 61; Dkt. # 14 at ¶ 43 (admitted allegation of the Amended Complaint). Commissioner Walkinshaw described "keep[ing] communities of interest together" and preserving "county lines, city lines, communities of interest, . . . and sovereign tribal nations" as his "guiding ethos." Dkt. 45-4 at 90; *see also* Dkt. # 14 at ¶ 44 (admitted allegation of the Amended Complaint). He proposed a

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

Hispanic opportunity district in the neighboring Legislative District 14. Underlying all of the Commissioners' plans were partisan performance concerns in each district and in the state overall.

The Washington Senate Democratic Caucus retained Dr. Barreto to help the Commission determine whether the federal VRA required the creation of a Hispanic opportunity district in the Yakima Valley. Dr. Barreto concluded that the results of twelve prior elections provided "crystal clear" evidence of racially polarized voting in the relevant area (Dkt. # 53-12 at 17) and proposed two options for a VRA-compliant district. Staff advised both Commissioner Walkinshaw and Commissioner Sims that, in light of election cases decided since the last redistricting and the Barreto assessment, a majority-minority district in the Yakima Valley area would likely be required under the VRA. Commissioners Sims and Walkinshaw proposed revised maps based on the Yakima Reservation district suggested by Dr. Barreto.

The Washington State Republican Party commissioned attorneys at Davis Wright Tremaine to evaluate Dr. Barreto's report and provide a legal analysis of what the Commission was allowed and required to do with respect to the legislative districts in and near the Yakima Valley. Davis Wright Tremaine highlighted the lack of any evaluation of how large a margin of Latino voters would be necessary to give them a functional majority in the proposed district, criticized the shapes of the districts Dr. Barreto suggested and the data set used to determine the number of Latinos in the area, argued that creation of a race-neutral, Democratic-leaning district would prevent legally significant bloc voting without resorting to racial distinctions, and noted

that Dr. Barreto had not performed a totality-of-the-circumstances analysis. The law firm concluded that the evidence of a VRA violation was not strong and that creating a majority-minority district in central Washington would likely result in an accusation of partisan gerrymandering in violation of Washington Constitution Article II, § 42.

The Senior Policy Counsel for the Washington Senate Democratic Caucus reviewed the Davis Wright Tremaine analysis and asked for input from Abha Khanna at the Elias Law Group, Yurij Rudensky at the Brennan Center, and Dr. Barreto. The general conclusions were that the three Davis Wright Tremaine attorneys who performed the legal analysis were not VRA experts, the analysis was not objective, and its conclusions were incorrect. These impressions were forwarded to at least one of the Commissioners.

With less than three weeks between the date on which Commissioners Sims and Walkinshaw released their revised maps and the deadline for submission of the redistricting plan to the legislature, the Commissioners set out to establish district boundaries that would reach their agreed targets for a specified number of strong Democratic and Republican districts, a specified number of districts that leaned Democratic or Republican, and a specified number of swing districts. While all four voting Commissioners wanted the redistricting plan to comply with the VRA, they disagreed about whether the statute required that a legislative district in the Yakima Valley have a majority Hispanic citizen voting age population ("HCVAP"). The concept of an HCVAP in the Yakima Valley was not rejected outright by either side, but rather became a subject of negotiation. Commissioner Graves, the primary negotiator for the

1   Republicans, insisted that if the Democratic Commissioners were going to insist on a majority

2   HCVAP district in the Yakima Valley, thereby improving the Democrats' performance in the

3   district, Republican performance in other districts had to be improved. Commissioner Sims, the

4   primary negotiator for the Democrats, was not willing to "negotiat[e] away Democratic

5   performance in other districts for a VRA-compliant district in eastern Washington if we were

6   legally required to draw it," however, and instead proposed dropping the HCVAP in Legislative

7   District 15 below 50%. Dkt. # 45-3 at 163 and 180-81.

8       Seconds before midnight on November 15, 2021, the Commission voted unanimously to

9   approve a legislative redistricting plan that reflected "a bipartisan consensus and historic level of

10  public input." Dkt. # 53-17 at ¶ 3. The precise legislative district boundaries were not delineated

11  in the plan adopted on November 15, 2021, but the plan provided a framework, based in large

12  part on partisan performance metrics across the state, from which staffers were able to convert

13  the approved redistricting plan into the district maps that were then forwarded to the legislature.

14  Commissioner Graves believes that the agreed framework for Legislative District 15 included a

15  50.1% HCVAP. Dkt. # 45-2 at 146. Commissioner Sims does not remember the exact

16  percentage of HCVAP to which the Commission agreed, but states that it was over 50%. Dkt.

17  # 45-3 at 101.

18      Commissioners Fain, Graves, and Sims believed the plan they adopted complied with the

19  VRA, but for very different reasons. Commissioners Fain and Graves did not believe a Hispanic

20  opportunity district in the Yakima Valley was required, whereas Commissioner Sims believes it

21

22  ORDER DENYING PLAINTIFF'S MOTION
    FOR SUMMARY JUDGMENT - 9

was required and that Legislative District 15 provided that opportunity. Commissioner Walkinshaw, on the other hand, was not sure whether the plan as adopted complied with the VRA, noting that his proposed map – which was compliant -- had not been adopted and "what we achieved was the process of a bipartisan commission that left questions . . . ." Dkt. # 45-4 at 305.

The legislature made minor adjustments to the plan it received from the Commission, including to Legislative District 15. The amended redistricting plan was adopted on February 8, 2022.

## DISCUSSION

Plaintiff seeks a summary determination that Legislative District 15 is an illegal gerrymander in violation of the Equal Protection Clause of the United States Constitution.

> The Equal Protection Clause prohibits a State, without sufficient justification, from "separat[ing] its citizens into different voting districts on the basis of race." *Miller* [*v. Johnson*, 515 U.S. 900, 911 (1995)]. The harms that flow from racial sorting "include being personally subjected to a racial classification as well as being represented by a legislator who believes his primary obligation is to represent only the members of a particular racial group." *Alabama* [*Legislative Black Caucus v. Alabama*, 575 U.S. 254, 263 (2015)] (alterations, citation, and internal quotation marks omitted). At the same time, courts must "exercise extraordinary caution in adjudicating claims that a State has drawn district lines on the basis of race." *Miller*, 515 U.S., at 916. "Electoral districting is a most difficult subject for legislatures," requiring a delicate balancing of competing considerations. *Id.*, at 915. And "redistricting differs from other kinds of state decisionmaking in that the legislature always is aware of race when it draws district lines, just as it is aware of ... a variety of other demographic factors." *Shaw v. Reno*, 509 U.S. 630, 646 (1993) (*Shaw I*).

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

> In light of these considerations, this Court has held that a plaintiff alleging racial gerrymandering bears the burden "to show, either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Miller*, 515 U.S. at 916. To satisfy this burden, the plaintiff "must prove that the legislature subordinated traditional race-neutral districting principles ... to racial considerations." *Ibid.*

*Bethune-Hill v. Virginia State Bd. of Elections*, 580 U.S. 178, 187 (2017).[2]

Based on the existing record, reasonable minds could disagree on whether the Commission subordinated traditional race-neutral districting principles to racial considerations when drawing Legislative District 15.[3] Ascertaining motive is an intensely fact-based inquiry, and, in order to safeguard the states' "discretion to exercise the political judgment necessary to balance competing interests" in the redistricting process, summary judgment on the predominance issue is appropriate only if plaintiff has established the state's motivation as a matter of law. *Miller*, 515 U.S., at 915. Traditional race-neutral districting principles include "compactness, contiguity, respect for political subdivisions or communities defined by actual shared interests, . . . incumbency protection, and political affiliation." *Alabama*, 575 U.S. at 272

---

[2] The decisionmaking at issue in this case encompasses the various steps and bodies through which the legislative power of redistricting is accomplished under Washington law, not simply the representative body itself. *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 805-07 (2015). As discussed above, the Washington Constitution prescribes a method for redistricting that involves the establishment of a Commission with limited legislative oversight to generate the redistricting legislation. Both the Commission and the legislature are therefore "part of the legislative process," and it is their combined efforts which must be evaluated for compliance with the Equal Protection Clause.

[3] There is no evidence that the legislature was motivated by race-based considerations when it made minor changes to the district boundaries.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

(internal quotation marks and citations omitted). The shape of Legislative District 15 is not less compact and contiguous than many others in the final map, and some or all of the traditional race-neutral considerations were important to the four voting Commissioners in varying degrees. The fact that racial considerations were *a* motivation for the drawing of a majority-minority district in the Yakima Valley does not necessarily mean that it was *the predominant* factor motivating the redistricting decision. *Easley v. Cromartie*, 532 U.S. 234, 253–54 (2001); *Bush v. Vera*, 517 U.S. 952, 959 (1996). Commissioner Sims, who seems to have had the most involvement in pursuing a majority-minority district in the Yakima Valley, was also attempting to increase the Democratic performance of the district and was willing to accept an HCVAP of less than 50% in order to reach bipartisan agreement. Belying plaintiff's predominance argument, Commissioner Sims was unwilling to bend on any of her other priorities in order to obtain a VRA-compliant district. Dkt. # 45-3 at 180-81. Commissioner Graves, with whom Commissioner Sims was negotiating prior to the November 15, 2021, deadline, states that the final map reflected considerations of HCVAP, keeping communities of interest together, respecting city, county, and school district boundaries, and excluding the traditional Yakima hunting and fishing areas: given these considerations, "there was a particular configuration that [Legislative District 15] was going to have," which was generated by staff for submission to the legislature on November 16th. Dkt. # 45-2 at 147-48. Commissioners Fain and Walkinshaw likewise had an array of core principles in mind as they reviewed proposed frameworks and maps. The jumbled mix of motives driving each individual Commissioner's decisionmaking, as

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

reflected in the current record, does not lend itself to judgment as a matter of law regarding the predominant factor that led to the adoption of Legislative District 15.

For all of the foregoing reasons, plaintiff's motion for summary judgment is DENIED. Taken in the light most favorable to defendants, the evidence could support a finding that race was simply one of a number of factors that led to the adoption of Legislative District 15 and that it did not predominate over other traditional race-neutral districting principles. Plaintiff has not met his burden of proving, through either "circumstantial evidence of [the] district's shape and demographics or through more direct evidence going to legislative purpose" the predominance element of his Equal Protection claim and is not, therefore, entitled to judgment as a matter of law. *Shaw v. Hunt*, 517 U.S. 899, 905 (1996) (internal quotation marks and citation omitted).

Dated this 21st day of April, 2023.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13