UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BENANCIO GARCIA III,<br><br>        Plaintiff,<br><br>    v.<br><br>STEVEN HOBBS, in his official capacity as Secretary of State of Washington, and the STATE OF WASHINGTON,<br><br>        Defendants. | CASE NO. 3:22-cv-05152-RSL-DGE-LJCV<br><br>OPINION AND ORDER DISMISSING PLAINTIFF'S CLAIM AS MOOT |

Chief District Judge David G. Estudillo authored the majority opinion, in which District Judge Robert S. Lasnik joined.  Circuit Judge Lawrence J.C. VanDyke filed a dissenting opinion.[1]

Plaintiff Benancio Garcia III brings suit arguing that Washington Legislative District 15 ("LD 15") in the Yakima Valley is an illegal racial gerrymander in violation of the Equal

---

[1] Because Plaintiff "challeng[ed] the constitutionality of the apportionment" of a "statewide legislative body" under 28 U.S.C. § 2284(a), the Chief Judge of the Ninth Circuit designated a three-judge panel to hear Plaintiff's constitutional claim.  (*See* Dkt. No. 18.)

- 1

Protection Clause of the Fourteenth Amendment.  The Panel sat for a three-day trial from June 5th to June 7th to hear evidence regarding Plaintiff's Equal Protection Clause claim.[2]  In light of the court's decision in *Soto Palmer*, the Court DISMISSES Plaintiff's claim as moot.

## I   MOOTNESS

"[T]he judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" *Flast v. Cohen*, 392 U.S. 83, 94 (1968).  "There is thus no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up).  Article III's case-or-controversy requirement prevents federal courts from issuing advisory opinions.  *See id.*  A party must have "a specific live grievance," and cannot seek to litigate an "abstract disagreement over the constitutionality" of a law or other government action.  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 479 (1990) (cleaned up).

The Court finds that Plaintiff's challenge to the constitutionality of LD 15 is moot given the *Soto Palmer* court's finding that LD 15 violates § 2 of the Voting Rights Act ("VRA").  Plaintiff seeks declaratory relief determining that LD 15 "is an illegal racial gerrymander in violation of the Equal Protection Clause of the Fourteenth Amendment" and an injunction "enjoining Defendant from enforcing or giving any effect to the boundaries of [] [LD 15], including an injunction barring Defendant from conducting any further elections for the

---

[2] The Panel heard evidence for the *Garcia* case concurrent with evidence presented for parallel litigation in *Soto Palmer v. Hobbs*, No. 3:22-cv-5035-RSL (W.D. Wash.).  For purposes of judicial economy, the Court refers the reader to the procedural and factual background in *Soto Palmer*, 2023 WL 5125390, at *1–3 (W.D. Wash. Aug. 10, 2023) and this Court's prior order (Dkt. No. 56).  The Court presumes reader familiarity with the facts of this case.  This order only addresses Plaintiff Benancio Garcia III's Equal Protection claim.

1  Legislature based on [] [LD 15]." (Dkt. No. 14 at 18.)  Plaintiff further requests the Court order
2  a new legislative map be drawn.  (*Id.*)

3        The *Soto Palmer* court determined that LD 15 violated § 2 of the VRA's prohibition
4  against discriminatory results.  *See Soto Palmer*, 2023 WL 5125390, at *11.  In so deciding, the
5  court found LD 15 to be invalid and ordered that the State's legislative districts be redrawn.  *Id.*
6  at *13.  Since LD 15 has been found to be invalid and will be redrawn (and therefore not used for
7  further elections), the Court cannot provide any more relief to Plaintiff.  Plaintiff does not assert
8  that any new district drawn by the Washington State Redistricting Commission ("Commission")
9  would be a "mere continuation[] of the old, gerrymandered district[]."  *North Carolina v.*
10 *Covington*, 138 S. Ct. 2548, 2553 (2018).  Plaintiff therefore lacks a specific, live grievance, and
11 his case is moot.

12       Traditional principles of judicial restraint also counsel against resolving Plaintiff's Equal
13 Protection Clause claim.  "A fundamental and longstanding principle of judicial restraint requires
14 that courts avoid reaching constitutional questions in advance of the necessity of deciding them."
15 *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988); *see also Three*
16 *Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 467 U.S. 138, 157 (1984) ("It is a
17 fundamental rule of judicial restraint, however, that this Court will not reach constitutional
18 questions in advance of the necessity of deciding them.").  The court's decision in *Soto Palmer*
19 makes any decision in the instant case superfluous.  A new Commission will draw new
20 legislative districts in the Yakima Valley and, if challenged thereafter, the propriety of the new
21 districts will be decided by analyzing the motivations and decisions of new individuals who
22
23
24

OPINION AND ORDER DISMISSING PLAINTIFF'S CLAIM AS MOOT - 3

constitute the Commission.³  The Court cannot and will not presume that the new Commission will be motivated by the same factors that motivated its predecessor.  Federal courts are courts of limited jurisdiction, and to unnecessarily decide a constitutional issue where there are alternate grounds available or where there is an absence of a case or controversy is to overstep our "proper, limited role in our Nation's governance."  *Biden v. Nebraska*, 600 U.S. _, 143 S. Ct. 2355, 2384 (2023) (Kagan, J., dissenting).

Our dissenting colleague disagrees that the instant case is moot.  In his view, the Commissioners racially gerrymandered the 2021 Washington Redistricting Map in violation of the Equal Protection Clause and therefore "the map was 'void *ab initio*.'"  Additionally, the dissent argues that longstanding principles of judicial restraint and constitutional avoidance are inapplicable here because the decision in *Soto Palmer* does not completely moot the relief sought by Plaintiff.  These arguments are uncompelling.

First, the view that LD 15 was void *ab initio* presupposes that Plaintiff established an Equal Protection violation.  To the contrary, a full analysis of the record presented does not yield such a result.  The Court declines to issue an advisory opinion on the validity of Plaintiff's Equal Protection claim, however.  Rather, it is sufficient to note only that we disagree with the dissent's summary and interpretation of the facts surrounding the creation of LD 15.  Importantly, the Commissioners' testimony on the specific issue of whether race predominated in the formation of LD 15 is absent from the dissent's summary of the facts, and the Court encourages readers to

---

³ In the event that the Commission fails to draw a new map by the deadline set by the *Soto Palmer* court, the parties will submit proposed maps to the *Soto Palmer* court and the court will adopt and enforce a new redistricting plan.  *See Soto Palmer*, 2023 WL 5125390, at *13.

examine the Commissioners' testimony in full.[4]  This testimony weighs heavily against finding that race predominated in the drawing of LD 15 and against finding an Equal Protection violation.[5]

---

[4] Commissioner April Sims, for example, specifically disclaimed that race was the most important factor. (*See* Dkt. No. 73 at 77.)  As she testified, "I would not agree that [race] [] was the most important factor. But that it was a factor." (*Id.*)  Commissioner Brady Walkinshaw similarly noted that the Commissioners discussed a number of factors, including race, but "none of those [factors] were predominant." (*Id.* at 124.)  He further emphasized the impact that the Commissioners' desire to unify the Yakama Nation into one legislative district had on the map (*see id.*), a factor that all Commissioners attested was important but is conspicuously absent from our colleague's analysis.  Commissioner Joe Fain testified that his overriding interest in drawing maps for LD 15 was to ensure "competitiveness." (*See* Dkt. No. 74 at 48, 58.)  He also testified that he believed Commissioner Walkinshaw would have voted for a map in LD 15 that would not have had a majority Latino Citizen Voting Age Population ("CVAP"). (*Id.* at 51.)  Finally, Commissioner Paul Graves testified that "race and the partisan breakdown of the district were" tied in his mind as the most important factors. (Dkt. No. 75 at 85.)

[5] The dissent's "ab initio" argument leads to the surprising assertion that the *Soto Palmer* court should have declined to issue an opinion in that case.  *Soto Palmer* was the first-filed challenge to the redistricting map, and it presented a clearly justiciable case and controversy.  Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976), and our dissenting colleague makes no effort to show that one of the "exceptional" circumstances that could justify a district court's refusal to exercise or postponement of the exercise of its jurisdiction existed, *Id.* at 813 and 817. Although the intervenors in *Soto Palmer* twice requested that the case be stayed, they did so on the ground that judicial efficiency would be served by waiting for the Supreme Court's decision in *Allen v. Milligan*, 599 U.S. __, 143 S. Ct. 1487 (2023).  At no point prior to the dissemination of the dissent did anyone suggest that a decision in *Soto Palmer* would be advisory or otherwise improper.

More importantly, the suggestion that the VRA claim should have been stayed or held in abeyance while the Equal Protection claim was resolved is not supported by case law or legal analysis.  The dissent does not discuss whether a stay of *Soto Palmer* would have been appropriate pending the resolution of *Garcia* under the rubric established in *Landis v. N. Am. Co.*, 299 U.S. 248, 254-56 (1936), nor does it cite any cases in which a decision on a VRA claim was postponed because of a related Equal Protection challenge.  *Milligan* itself presented just such a confluence of claims, and the Supreme Court addressed the appropriateness of injunctive relief on the VRA claim without considering, much less prioritizing, the pending Equal Protection challenge. *See also League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 410 (2006) (resolving VRA claims without reaching the companion Equal Protection claim); *Singleton v. Allen*, 2:21-cv-1291-AMM-SM-TFM, Dkt. # 272 at 7–8, 194–95 (N.D. Ala. Sept. 5, 2023) (resolving VRA claims and reserving ruling on Equal Protection claims in light of the fundamental and longstanding principles of judicial restraint and constitutional avoidance).

It is also erroneous to argue that "resolving *Soto Palmer* in the *Soto Palmer* plaintiffs' favor does not moot *Garcia*." As noted, LD 15 will be redrawn and will not be used in its current form for any future election. The *Soto Palmer* court has therefore granted Plaintiff complete relief for purposes of our mootness analysis. *See New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 1526 (2020) (vacating judgment as moot where New York City amended its laws to grant "the precise relief that petitioners requested in the prayer for relief in their complaint" notwithstanding requests for declaratory and injunctive relief from future constitutional violations).[6]

Our colleague argues that this case is not moot because Plaintiff may obtain partial injunctive and declaratory relief. Specifically, the Court could declare that LD 15 was an illegal racial gerrymander and enjoin the state from "performing an illegal racial gerrymander when it redraws the map." This type of relief is insufficient to avoid a finding of mootness. It goes without saying that a federal court may only direct parties to undertake activities that comply with the Constitution, and the *Soto Palmer* court's directive to the State to redraw LD 15 properly presumes that the State will comply with the Constitution when it does so lest the future district be challenged once again. *Cf. Holloway v. City of Virginia Beach*, 42 F.4th 266, 275 (4th

---

[6] The dissent attempts to distinguish *New York State Rifle & Pistol Ass'n*, but the petitioners in that case argued, like our colleague, that an intervening change to New York City's firearms laws did not moot their request for declaratory and injunctive relief because of the continued possibility of future harm from New York City's unconstitutional firearms licensing scheme. *See* Petitioners' Response to Respondents' Suggestion of Mootness at 15–17, *New York State Rifle & Pistol Ass'n*, 140 S. Ct. 1525 (No. 18-280). As the petitioners noted in their brief, "nothing in the City's revised rule precludes the previous version of the rule, which governed for nearly two decades, from having continuing adverse effects." *Id.* at 16. The petitioners specifically sought a declaration from the Supreme Court that "that the City's longstanding restrictive [firearms] licensing scheme is incompatible with the Second Amendment" and that any attempt to impose a licensing scheme was "null and void ab initio." *Id.* The Supreme Court, however, rejected the petitioners' argument and held that the case was moot notwithstanding the continued possibility of constitutional harm from the newly revised rule.

Cir. 2022) (rejecting argument that VRA case was not moot and Plaintiffs were entitled to court order "directing implementation of a new system that 'compl[ies] with Section 2'" of the VRA in light of changes to state law that provided otherwise complete relief).

The dissent asserts that "the order in *Soto Palmer* ensures that [Garcia] will not receive what he argues is a constitutionally valid legislative map" because his "claimed injury is not merely capable of repetition; it almost is certain to repeat itself." In the dissent's opinion, Garcia will most certainly suffer injury because *Soto Palmer* "ordered that the State engage in *even more* racial gerrymandering" than that claimed by Garcia in this case. But this claimed injury from a future legislative district is speculative because compliance with § 2 of the VRA, as ordered in *Soto Palmer*, would not result in a violation of the Equal Protection Clause. *See Cooper v. Harris*, 581 U.S. 285, 306 (2017) ("States enjoy leeway to take race-based actions reasonably judged necessary under a proper interpretation of the VRA."); *see also Milligan*, 143 S. Ct. at 1516–17 ("[F]or the last four decades, this Court and the lower federal courts have repeatedly applied the effects test of § 2 as interpreted in *Gingles* and, under certain circumstances, have authorized race-based redistricting as a remedy for state districting maps that violate § 2.").

As the dissent concedes, "the Supreme Court has given States 'leeway' to draw lines on the basis of race in redistricting when States have good reasons, based in the evidence, to believe the racial gerrymander necessary under the VRA." The *Soto Palmer* court detailed in depth why a VRA compliant district is required for the Yakima Valley. *See, e.g.*, 2023 WL 5125390, at *5–6, 11 (finding that the three *Gingles* factors were met and that the State had "impair[ed] the ability of Latino voters in [] [the Yakima Valley] to elect their candidate of choice on an equal basis with other voters"). The dissent would find that the prior Commissioners failed to judge a

VRA district necessary, and therefore any racial prioritization that the Commissioners engaged in would not survive strict scrutiny. But this determination is necessarily fact-specific and only applicable to the actions of the prior Commission. By the dissent's own admission, so long as the State judges the use of race necessary to comply with the VRA it is not unlawful for the State to create a district with a higher Latino CVAP.

The dissent also argues the case is not moot because Plaintiff may want to appeal this case to the Supreme Court. Whether Plaintiff may desire to utilize this litigation to "challenge current precedent that considers compliance with the VRA a sufficient reason to racially gerrymander" is immaterial to the issue of whether a case is moot. Neither *Wis. Legislature v. Wis. Elections Comm'n*, 142 S. Ct. 1245 (2022), nor *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68 (9th Cir. 2022), stands for the proposition that a trial court, in deciding whether a case is moot, should consider how a party might utilize the litigation to challenge established Supreme Court precedent. Indeed, such an argument reinforces the majority's finding that the case is moot because a desire to appeal binding Supreme Court precedent, untethered from any specific injury, is far removed from a specific, live controversy.[7] It "would [also] reverse the canon of [constitutional] avoidance . . . [by addressing] divisive constitutional questions that are both unnecessary and contrary to the purposes of our precedents under the Voting Rights Act." *Bartlett v. Strickland*, 556 U.S. 1, 23 (2009).

This Court "is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the

---

[7] The dissent, like the State of Alabama, might wish for a different interpretation of § 2 of the VRA than that which has prevailed in this country for nearly forty years. The United States Supreme Court, however, recently rejected Alabama's invitation to do so in *Milligan*.

OPINION AND ORDER DISMISSING PLAINTIFF'S CLAIM AS MOOT - 8

result as to the thing in issue in the case before it." *People of State of California v. San Pablo & T.R. Co.*, 149 U.S. 308, 314 (1893). The fact remains that the *Soto Palmer* court has ordered the State to redraft legislative districts in the Yakima Valley. Having done so, the relief Plaintiff seeks in this litigation is now moot.

## II   CONCLUSION

Accordingly, the Court DISMISSES as moot Plaintiff's claim that LD 15 violates the Equal Protection Clause. A judgment will be entered concurrent with this order.

Dated this 8th day of September, 2023.

David G. Estudillo
United States District Judge

Robert S. Lasnik
United States District Judge